## Case No. 8,207.

### LEEF v. GOODWIN et al.

[Taney. 460.] [1]

Circuit Court, D. Maryland. Dec. 2, 1841; Jan. 7, 1842.

MARITIME LIEN — REPAIRS — JOINT OWNERSHIP — UNKNOWN OWNER — APPROPRIATION OF PAYMENTS — RUNNING ACCOUNTS.

1. Where work was done upon a vessel owned by two persons, but registered in the name of one only, and the libellants, who did the work, had no knowledge, at the time, of the interest of the other owner: *held*, that the owner, whose name did not appear in the register, was liable, as well as the other.

2. According to the principles upon which payments are appropriated, the debtor, if he pleases, has a right to make the appropriation; if he omits it, the creditor may make it; if both omit it, the law will apply the payments according to its own notions of justice.

3. In cases of running accounts between the parties, unless there are some particular circumstances to vary the rule, the payments ought to

be applied to extinguish the debts according to priority of time.

[Appeal from the district court of the United States for the district of Maryland.]

The appellees in this case [Caleb Goodwin, Andrew Flannigan, and Samuel Trimble] filed their libel in the district court against the appellant [Henry Leef] and Luke League, as joint owners of the schooner Light, to recover for work and materials furnished said vessel. The appellant resisted the claim on the ground that the work and materials were contracted for by Luke League, the other owner; and on the further ground that the whole amount claimed had been paid. Luke League, the other defendant, admitted the allegations of the libel to be true. The district court (Heath, J.) rendered a decree for the libellants for the sum of $275 88, with interest from the 1st of June, 1840, and costs; from which decree the appellant appealed to this court.

Stewart & Baker, for appellant.

Wm. H. Gatchell, for appellees.

TANEY, Circuit Justice. In this case, it appears from the accounts, that the libellants are ship-carpenters, carrying on business at the city of Baltimore, and that there was a running account, for several years, between them and Luke League, who was one of the respondents in the district court, and who has not appealed from the decree of that court.

The account consists of charges for work done for different vessels, and materials found by the libellants, at the request of Luke League, and of sundry credits given, from time to time, some of which are appropriated to the work done upon particular vessels, and some of them without any specific appropriation. There are a few items in the account not charged for work upon any particular vessel; but generally the vessel is named. The claim made by the libellants in this case is for repairs and alterations of the schooner Light; and this claim is a part of the charges against Luke League, in the running account above mentioned. The principal items in relation to this controversy are charged in June and July, 1839, at which time the schooner underwent considerable alterations, so as to convert her from a vessel suited to the navigation of the Chesapeake Bay, to one fitted for the sea. There are two inconsiderable charges in the March preceding, and one in the October following, but the principal part of the claim appears to have arisen in June and July, 1839.

At the time the work was done upon the schooner, the appellant and Luke League, the two respondents in the district court, were joint owners of the vessel, but she was registered in the name of League only, and the libellants had no knowledge of the interest of the appellant. Acting under the impression that League was the sole owner,

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

the charges were made against him, as before mentioned; he has since become insolvent, and the libellants insist that a balance is still due to them for the work done upon the Light, which they are entitled to recover from the appellant.

Undoubtedly, the appellant as well as League, is answerable for this claim, if it has not already been discharged. But the appellant contends that it has been discharged; and as there is no controversy about the original amount of the debt, the whole dispute turns upon the application of the payments which were, from time to time, made by League; and whatever credits would have been applicable to this particular claim, in case League had been the sole owner of the schooner, must enure also to the benefit of the joint owners. His admissions, in his answer in the district court, do not bind the appellant.

The general principles upon which payments are to be appropriated, are clearly stated by the supreme court in the case of the United States v. Kirkpatrick, 9 Wheat. [22 U. S.] 737. The debtor, if he pleases, has a right to make the appropriation; if he omits it, the creditor may make it; if both omit it, the law will apply the payments according to its own notions of justice. And in cases of running accounts between the parties, unless there are some particular circumstances to vary the rule, the payments ought to be applied to extinguish the debts according to the priority of time.

In applying this principle to the case before the court, it appears from the books offered in evidence, that the account continued between the libellants and League, until July 1841, being about two years after the work was done to the Light; sundry charges, during this period, are made against League, and credits given him to a considerable amount. One of these credits is specifically appropriated to the account; the others appear to be general credits; but it is difficult, from the short entries in the books, to determine whether some of the credits may not have been intended by the entries to be specifically appropriated, and they may, perhaps, be more satisfactorily explained by further proof.

The auditor of this court is, therefore, directed to state from the books of the libellants, the account between the parties to the present controversy, applying the credits, according to the principles hereinbefore laid down. It is unnecessary to go further back with the account than January 13th, 1839, when a balance appears to have been struck, and League found to be indebted in only the small sum of $10 44. The auditor is also directed to take such further evidence as may be adduced by either party, in explanation of the credits in the account, or any of them; and to state such account as either of the parties may deem conformable to the rules herein prescribed for the application of the payments; and to report his proceedings under this order, to the court, as soon as conveniently may be done.

On the 31st of December, 1841, the auditor filed the following report:

"The auditor humbly reports to the court, that in obedience to the order of the 2d day of December, 1841, passed in this cause, he has examined such witnesses as were produced by the parties, together with the documentary testimony laid before him; and therefrom stated two accounts, No. 1 and No. 2, which are hereto annexed.

"The documentary testimony, in addition to the books of the appellees, consisted of a receipt of Luke League filed by the appellant and herewith returned; and the oral evidence was furnished by two witnesses produced and sworn on the part of the appellees. To one of these, Luke League, the proctor for the appellant objected, as incompetent, and his examination was taken subject to exception.

"Hooper was examined in chief, to prove that the item of credit in the books under date of July 8th, 1840, was fifty dollars too large; it appeared by him, that League had done work on a vessel to the amount of $800 and upwards, and had a claim, accordingly, one-half of which was assigned to the appellees; he afterwards, however, agreed to deduct $100 from the bill, and the appellees, in consequence, submitted to the deduction; received $50 less than the amount of the credit. Upon cross-examination, the witness stated, that the agreement to make the deduction, was concluded about three months after the work was done, that is, late in the spring.

"Luke League swore that the appellant and himself owned jointly the Leander, Neptune and Light, and that they, together with one Mason, owned the O'Kelly, which is mentioned in one of the bills, by the name of the new schooner; that he paid the whole of the Neptune and Leander's bills, and all that was paid on the Light's bills; that his account against the appellees, was nearly as much as their account against him, which is filed among the papers, dated 1st January, 1839; that the balance claimed by the libel and how it was ascertained, was shown to and approved by him before he filed his answer in the district court; that he agreed to deduct $100 from the bill against the B. Sumner, half of which was assigned to the appellees, and did so, some time after the bill was rendered.

"Upon cross-examination, he stated that the bill of the appellees against him, filed with the papers, was rendered by them to him; that he and Leef had a settlement and compromised, he agreeing to take $250, and Leef's assumption of parts of some bills in lieu of 600 or 700 dollars to which he thought himself entitled; that Leef's as-

sumption was of the one-half of two bills against the Light for sails and copper, and amounted to $255 36; that the only bills against the Light, at that time, were these two, and that of the appellees; that deponent assumed to pay the other half of the copper and sails bill, and the whole of the bill of the libellants; that prior to the compromise, Leef had paid some bills, and deponent others, and that the receipt shown him was the one which was given by him to Leef at the time of the compromise.

"Upon the evidence thus furnished him, the auditor has stated two accounts, Nos. 1 and 2. By the first, the debits on the appellee's books are extinguished by the credits there, according to the priority of the charges; and by the second, it is shown, what items of charge against the Light remain unsatisfied, after such an appropriation of credits. The amount chargeable to the Light, is thus ascertained to be the sum of $107 01.

"No evidence was offered to show that any of the several credits were applicable to particular items of charge, and they have been treated accordingly as general payments. The testimony above detailed in reference to the reduction of one credit, by the sum of $50, seemed to the auditor satisfactory, and he has therefore allowed it.

"J. Mason Campbell, Auditor.

"Auditor's fees, $14.

"31st of December, 1841."

### No. 1.

Luke League in account with Caleb Goodwin & Co.

**1839. DR.**

| | | | |
|---|---|---|---|
| Jan. | 13. | To balance | $10 44 |
| | | Schooner Sarah Ann | 5 17 |
| Feb. | 4. | " Neptune | 67 50 |
| " | 20. | " " | 58 81 |
| " | 25. | " " | 8 22 |
| Mar. | 7. | Schooner Light | 2 82 |
| " | | " Hetta Jackson | 1 23 |
| " | 13. | Caulking boat | 1 38 |
| " | 21. | Schooner Neptune | 50 |
| " | 23. | " Sarah Ann | 31 39 |
| " | 26. | " Light | 18 53 |
| April | 11. | Sundries D. & L. | 2 50 |

| | | |
|---|---|---|
| | | $208 49 |
| | Deduct credit | 20 00 |

| | | | |
|---|---|---|---|
| April | 20. | To balance | $188 49 |
| " | 27. | New schooner | 81 40 |
| | | Hetta Jackson | 5 60 |
| " | 24. | " | 28 01 |
| " | 26. | Sundries | 1 60 |
| May | 6. | New schooner | 49 66 |
| " | 23. | Schooner Sarah Ann | 2 20 |
| " | 28. | Dreger & League, sundries | 8 00 |
| June | 14. | Schooner New Light | 345 59 |
| July | 6. | " | 159 76 |

| | | |
|---|---|---|
| | | $865 31 |
| | Deduct credits | 864 93 |

| | | | |
|---|---|---|---|
| July | 6. | To balance | $ 38 |

### No. 2.

**1839. DR.**

| | | | |
|---|---|---|---|
| July | 6. | To balance unsatisfied of bill charged this day | $ 88 |
| " | 18. | Charge this day | 100 58 |
| Oct. | 16. | Charge this day | 6 05 |

| | |
|---|---|
| | $107 01 |

| | | CR. | |
|---|---|---|---|
| **1839.** | | | |
| July | 13. | Old mast | $ 7 00 |
| " | 22. | Sundries | 5 00 |
| **1840.** | | | |
| May | 30. | By bill | 353 48 |
| July | 8. | Sundries, bill | 356 60 |
| **1841.** | | | |
| Jan. | 28. | Sundries | 142 85 |

| | |
|---|---|
| | $864 93 |

TANEY, Circuit Justice. In this case, the court, after hearing the proofs offered by each party, and after the case had been fully argued by counsel on both sides, passed an order, on the 2d day of December last, referring the books and accounts produced in evidence to the auditor, with instructions as to the principles upon which the credits should be allowed. The auditor filed his report on the 31st of December, and the court gave to each party time to file exceptions to the report, until the meeting of the court on this day. Some new testimony has been taken by the auditor, but none that throws any new light upon the subject referred to him, except that of an over credit of $50 in the books of the libellants against themselves, which has been corrected by the auditor. No exceptions have been filed to the report by either party. It is, therefore, this 7th day of January, 1842, by the circuit court of the United States for the Fourth circuit in and for the Maryland district, ordered, adjudged and decreed that the report made by the auditor, be and the same is hereby affirmed; and that the said Henry Leef pay to the libellants the sum of $107 01, with interest from the 16th day of October, 1839, each party to pay their own costs, and each to pay the one half of the auditor's fees. And that so much of the decree of the district court as is inconsistent with this decree, be and the same is hereby reversed.